MARX v. McMORRAN.[1]

1. ESTATES OF DECEDENTS — ADMINISTRATORS — ATTORNEY'S SER-
   VICES—COMPENSATION.
   Where an administrator knows that an attorney is rendering
   services which are beneficial to the estate, and interposes no
   objection, the estate should pay for the services, although
   there was no contract which would make the administrator
   personally liable.

2. SAME—TRIAL—BRIEF.
   An attorney who performs services beneficial to the estate of
   a decedent should receive pay for the preparation of a brief
   as well as for the time spent in the trial of a case.

Error to St. Clair; Law, J. Submitted February 3,
1904. (Docket No. 71.) Decided April 26, 1904.

Henry F. Marx presented his final account as adminis-
trator of the estate of Albert Meswald, deceased. The ac-
count was allowed in the probate court, and Henry Mc-
Morran, administrator of the estate of Sarah C. Meswald,
deceased, appealed to the circuit court. From a judgment
for appellant, said Marx brings error. Modified and af-
firmed.

*James A. Muir* (*Orla B. Taylor,* of counsel), for ap-
pellant (Marx).

*Phillips & Jenks* and *Goulder, Holding & Masten,*
for appellee.

MONTGOMERY, J. This case comes before us for re-
view of the account of Henry F. Marx, administrator of
the estate of Albert Meswald, deceased. The account was
presented in the probate court and allowed, whereupon
Henry McMorran, administrator of the estate of Sarah C.

---

[1] Rehearing denied January 30, 1905.

Meswald, deceased, appealed from the order of allowance. On a trial of the case in the circuit court a special finding of facts and law was made. .The account was very largely reduced,- and Marx, administrator, has brought the case here for review. The items in dispute are the attorney fees charged by Mr. O. C. Pinney and Mr. James A. Muir for services in connection with the administration of the estate of Albert Meswald.

The record is voluminous, containing, as it does, the entire testimony taken on the trial. The briefs discuss numerous questions, but, as it was practically conceded by the appellant in his reply brief that the only question which we need consider is the question of the allowance of attorney fees to Mr. Muir and Mr. Pinney, we will limit our discussion to such questions as bear directly upon the points presented affecting the amount of the allowance.

It appears that Albert Meswald and his wife, Sarah C. Meswald, were both aboard the propeller Wokoken when she foundered on Lake Erie, October 14, 1893, and that both perished in this disaster. As to which died first is not now necessary to determine. On October 21, 1893, John Mitchell, a brother of Sarah C. Meswald, was appointed administrator of the estate of Albert Meswald by the probate court of Cuyahoga county, Ohio, upon a petition which alleged that the decedent was domiciled in St. Clair county, Mich., at the time of his decease. Letters were issued authorizing Mitchell to administer upon the estate of the decedent situated in the State of Ohio. O. C. Pinney, a lawyer at Cleveland, was then employed as attorney of Louis Meswald, an uncle of Albert Meswald, to look after the interests of Meswald. It was through Pinney that the services of Mr. Muir, of Port Huron, were enlisted, and from this date a legal contest has been waged between the heirs of Albert Meswald and the heirs of Sarah C. Meswald.

Among other steps taken by the heirs of Albert Meswald, the appointment of a general administrator by the

probate court of St. Clair county was secured; Mr. Albert
J. Gilchrist being first appointed, and thereafter, upon his
resignation in November, 1894, the present administrator,
Henry F. Marx, being appointed. As the representative
of Marx, administrator, and Louis Meswald, Mr. Pinney
took steps in the courts of Ohio to secure the transfer of
the fund to the State of Michigan.

It would be as tedious as the counsel on either side were
apparently untiring for us to pursue in detail in this
opinion, step by step, the various motions, cross-motions,
appeals, and trials which were entered upon having in
view the end of transferring this fund to Michigan, where
it unquestionably belonged. On the one side it is averred
that Mr. Pinney and Mr. Muir engaged in useless liti-
gation, were unnecessarily and unusually active, and that
the result might have been reached without incurring the
large expense to the estate with which it is now sought to
charge it. We agree that the finding of the circuit judge
that there is some justice in this claim is correct. The
result might have been reached more directly. On the
other hand, it is beyond question that Mr. Mitchell and
his counsel placed in the way of Mr. Pinney and Mr.
Muir obstacles at almost every step, and waged an un-
justifiable contest against their efforts to secure the trans-
fer of this fund to Michigan. The circuit judge found
that Mr. Pinney and Mr. Muir dictated who should be ap-
pointed administrator, and found that Mr. Pinney and
Mr. Muir were never employed by either of these ad-
ministrators, Gilchrist or Marx, in such manner as would
bind the administrator personally, or in any such manner
as should equitably bind the estate, except as specifically
set forth. He further found that an administrator is not
interested in any contest between heirs; that the question
as to whom the estate ultimately goes is not one that
interests the administrator; but that successful litigation,
although instituted for an heir, or under such circum-
stances that the heir might be primarily liable, may in
some instances be a proper charge against the estate; and

he proceeded to make certain allowances to the attorneys upon this basis. The finding that these administrators never employed the attorneys in such manner as to personally bind the administrator is supported by the testimony. But we think no other conclusion can be reached from the testimony than that the administrators were both cognizant of the services which were rendered by Mr. Pinney and Mr. Muir, that they interposed no objection to it, and that it was expected that for such services as were distinctly beneficial to the estate the estate would be expected to pay. Gilchrist, in effect, testifies to this.

The only question that has given us trouble is the question what would be a reasonable allowance, taking into account the amount of the estate and the character of the services rendered. The counsel for the appellant concede the propriety of the court taking into account the amount of the estate in determining the amount of charges which should be fixed. As the evidence is undisputed as to the services rendered and expenses incurred, it only remained for the court to determine what a reasonable and proper allowance should be in each case.

The allowance made to Mr. Muir was $351.25. This allowed him for the bare time employed in the trial of a case at Cleveland, without any allowance for preparation of brief. It excluded one item of services at Marine City, and expenses. We think that this allowance should be increased $88.50, making the allowance to Mr. Muir $439.75 for services and expenses.

There was allowed to Mr. Pinney for services in preparation for trial, seven days, and all the expenses incurred, and time in taking depositions, in preparation of preliminary brief, charges paid to witnesses, stenographer, etc., on this trial, the meager sum of $100, the expenses alone amounting to $51.68. The services for this protracted contest were reasonably worth $250. There was also charged by Mr. Pinney, for services in contesting the final account of John Mitchell, administrator, and expenses, $300. The finding of the circuit judge treats $150 as a reasonable

charge for this, and, as Mr. Pinney received $150 in all
from Louis Meswald, applies this in payment of this ser-
vice. We think this unfair to Mr. Pinney. Other ser-
vices were rendered by Mr. Pinney, which had direct re-
lation to the contest between Meswald and the heirs of
Mrs. Meswald, to which the payment received from Mes-
wald would more properly apply. We think an allowance
of $150 should be made to Mr. Pinney on this account.
There should also be allowed to Mr. Pinney for services
in the claim against the Arbeiter Bund the sum of $25.
These additions to the account as allowed by the circuit
judge would make the allowance to Mr. Pinney stand
$746.68.

The order of the circuit judge will be modified. The
allowance will stand, as stated: To Henry F. Marx,
$339.96; on account of James A. Muir's services, $439.75;
on account of the services of O. C. Pinney, $746.68; and,
as so modified, will stand affirmed. The costs of the pro-
ceedings in this court will be chargeable against the estate.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred.
GRANT, J., took no part in the decision.